IN RE PETITION FOR REINSTATEMENT OF Law
License of R. Wayne LEE

90-345                                    806 S.W.2d 382

Supreme Court of Arkansas
Opinion delivered April 1, 1991

*Cliff H. Hoofman*, for petitioner.

*Stephen A. Mathews*, for respondent.

PER CURIAM. The petitioner, R. Wayne Lee, was denied reinstatement to practice law by the Arkansas State Board of Law Examiners (Board) on December 3, 1990. On appeal, Lee claims that the Board's findings of fact and conclusions of law were clearly erroneous and that he should be reinstated to practice law. We disagree and affirm the Board's decision.

Lee received a license to practice law in 1978. Between 1984 and 1985, Lee participated with then city attorney R. Jack Magruder III in a scheme to defraud the City of Little Rock (City) by submitting, on at least five occasions, false billing statements for unperformed legal services. The City paid Lee approximately $20,000 in legal fees, which Lee divided with Magruder.

Lee was indicted by a federal grand jury on one count of conspiracy to violate the Federal Mail Fraud Statute and ten counts of violation of the same statute. Lee pled guilty to the conspiracy count, and the latter ten counts were dismissed. This court granted Lee's subsequent petition to surrender his license on March 3, 1986, in which Lee acknowledged he had violated the federal law and Model R. Prof. Cond. 8.4.

Lee was sentenced to imprisonment for twenty months; however, he was released after six months in prison, transferred to a half-way house, and he obtained work as a paralegal and investigator for a law firm in Conway County.

On April 20, 1990, Lee filed an application for reinstatement with the Board. The chairperson determined that she was unable to make a decision as to Lee's eligibility for reinstatement and, pursuant to the Arkansas Rules Governing Admission to the Bar Rule XIII, referred the matter for a hearing. In accordance with our rules, the hearing was conducted before a three member panel, and the transcript was submitted to all Board members for a vote.

The Board, after considering the entire record *de novo* and

with two members voting for reinstatement, one member abstaining, and eight members voting against reinstatement, determined that Lee was not eligible for reinstatement to his license to practice law. Rule XIII; *Scales* v. *State Bd. of Law Examiners*, 282 Ark. 578, 669 S.W.2d 895 (1984).

■ The Board made various findings of fact and conclusions touching on the questions of whether or not Lee had received a pardon, restoration of his rights, and restitution of all monetary losses sustained by third parties. In addition, the Board considered numerous recommendations from responsible persons as to Lee's current good moral character and mental and emotional stability. In making its final resolution, the Board keyed on Lee's personal behavior in relation to Rule 8.4 and its commentary, which provides in pertinent part as follows:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

\* \* \* \*

### COMMENT:

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud. . . . However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.'. . . . Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dis-

honesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

\* \* \* \*

The Board observed that "the conduct of R. Wayne Lee, for which he was convicted, involved dishonesty, breach of trust, and seriously interfered with the administration of justice and that such conduct undermined the confidence of the public in our system of justice and the legal profession" and concluded:

\* \* \* \*

Rule 13 of the Rules Governing Admission To the Bar provides that every applicant for reinstatement of license to practice must be of good moral character and mentally and emotionally stable. The burden of establishing eligibility shall remain with the applicant. The overriding considerations in the question of readmission are the public interest and the integrity of the Bar and the Courts, with due consideration to the rehabilitation of the Petitioner with respect to good moral character and mental and emotional stability. *In re Shannon*, 274 Ark. 106, 621 S.W.2d 853 (1981). . . . Based upon the record as a whole and considering all of the factors set out in Rule 13 and the Supreme Court's decision of *In re Shannon, supra*, R. Wayne Lee has failed to meet his burden of establishing eligibility for reinstatement. . . .

We treat this matter *de novo* as each case must be examined on its own set of facts. We continue to adhere to the guidelines ennunciated in *In re Shannon, supra*, and in doing so, we note that Lee violated Rule 8.4 on at least five separate occasions. In each instance, Lee dishonestly received money, breached the trust bestowed upon him as a special attorney for the City of Little Rock, tendered false statements for services rendered, and interfered with the administration of justice by conspiring with the then city attorney to defraud the City and the public, which supports the City with its tax monies. It is hard for us to envision any activity on the part of an attorney or public

official that could be more damaging to the administration of justice or more undermining of the confidence of the public in our legal profession.

Lee's responses to these acts of misconduct and statements as to his "mens rea" during the time frame in question, leaves us with vague and deceptive answers. In reading the record, we are unable to find any real signs of responsibility on his part. For example:

Q     When you submitted the first — we'll describe it as erroneous bill, did you know it was wrong?

A     I probably, to be honest with you, didn't think about it, Chris. I probably didn't — I probably had — I've gone back over that question in my mind a thousand times. And I don't have any idea. I just don't know.

Q     Well, if you didn't know it then, then when did you come to the realization — as you've indicated, it went on for a period of maybe a year. So you had to submit several erroneous bills.

A     Actually, Mr. Magruder just give me the bills to send back to them.

Q     However, you knew they were erroneous?

A     Right.

Q     When did it occur to you that what you were doing was wrong?

A     I don't know that I can answer that. I just didn't do it after the fifth billing, you know.

Q     When did you become aware that you were under investigation?

A     The best I remember, at the point that the investigation started, Mr. Magruder had already left the City Attorney's Office and had been elected Municipal Judge. And they had indicted him. And he came to see me about representing him. And I went to the United States Attorney's Office and told them, "I'm going to be representing Mr. Magruder in this instance." And the U.S. Attorney

said, "You can't. You have a conflict." And I said, "Well, if you're trying to imply that I have any implication in any of this stuff you're talking about with him, you're wrong. I'll show you all of the bills and give you names, addresses, and phone numbers of all people I've ever represented in Traffic Court," and I did.

And the best of my knowledge, they talked to all of them. And then I couldn't figure out why he was saying I had a conflict, and then I got a letter from the Federal Grand Jury saying, "You're being investigated for mail fraud." And, quite honestly, I hate to admit my stupidity, I didn't know what mail fraud was. I thought that had something to do with pornography or something. And I couldn't figure out what the deal was. And I was trying to call down there to find out.

Q    At the time you went to talk to the U. S. Attorney, you had aleady submitted five eroneous bills. At that time did you know, in your own mind, that you had done wrong?

A    I'm sure if I thought about it, I knew I did wrong, but I had no inkling that that's — I mean, that was long since past. I had no inkling that that's what they were talking about. I guess, are you asking me when did the realization hit me?

Q    Uh-huh.

A    When I got the letter from the Grand Jury and got in contact through my attorney's office with — the United States Attorney's Office, and they informed me as to what it was, that's when I — when the realization hit me that whether or not that's how, quote, "things are done," that's not the right way to do them, and that I had done wrong. That's when it actually stuck with me that I had committed an error in judgment.

Simply put, we share the Board's concern with the nature of the conduct for which Lee surrendered his license. This factor is implicit in our consideration of the public interest and the integrity of the bar and courts. The record supports the Board's finding against Lee's reinstatement, despite his proffer of evidence in support of his current "good moral character" and "emotional stability."

The practice of law is a privilege, not a matter of right. Rule XIII provides that the burden of establishing eligibility shall remain with the applicant. The American Bar Association's Standing Committee on Professional Discipline has stated that the presumption should be against readmission. Model Rules for Lawyer Disciplinary Enforcement's Executive Summary (adopted in August 1989).

In light of the foregoing factors, we cannot say that the Board's findings and conclusions of law were clearly erroneous. The decision not to reinstate Lee is affirmed.

CORBIN and BROWN, JJ., not participating.