ROBIN F. WYNNE, Associate Justice
James Scott Adams challenges the decision of the State Board of Law Examiners (Board) finding that he is procedurally barred from pursuing his petition for readmission to the Bar of Arkansas. Because this case arises under this court's power to regulate the practice of law, our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1-2(a)(5) (2017). We affirm the decision of the Board.
Adams was admitted to the practice of law in Arkansas in 1981, with Arkansas Bar number 81001. He served as a district judge in Conway County from 1988 until 2010. In June 2010, Adams filed a petition in this court seeking to surrender his law license. In his petition, Adams acknowledged numerous complaints filed against him by the Office of Professional Conduct, as well as a new grievance filed by a client, and stated in part
In order to avoid the expense, distress and embarrassment of addressing [these] matters, which have great potential to place me in the position of defending a disbarment proceeding, it is my considered decision to voluntarily petition this Court for the surrender of my license to practice law in the State of Arkansas.
....
All statements made in this Petition are true and correct. In order to avoid unnecessary proceedings, I have decided to voluntarily offer the surrender of my Arkansas law license. This surrender is freely and voluntarily made. I have not been coerced nor intimidated into surrendering my license, nor have I been made any promise of benefit nor given any inducement whatsoever to do so. I am fully aware of the implications of this surrender, and understand that this surrender is unconditional. I am aware that I cannot be readmitted to the Bar of Arkansas except upon application made to the State Board of Bar Examiners in accordance with the Rules Governing Admission to the Bar, or any successor rules, and pursuant to the restrictions of Section 24 of the Procedures of the Arkansas Supreme Court Regulating Professional *838 Conduct of Attorneys at Law (2002) ("Procedures") or any successor rules.
On August 2, 2010, on recommendation of the Committee on Professional Conduct, this court accepted Adams's petition to surrender, in lieu of potential disbarment proceedings, his license to practice law in Arkansas.[1] In re Adams , 2010 Ark. 318, 2010 WL 3611744 (per curiam).
In September 2016, Adams filed an application with the Board for readmission to the Bar of Arkansas. As part of his application, Adams stated that he had a severe problem with alcohol in the years leading to the surrender of his law license, and that he has not used alcohol since July 2010. The chair of the Board issued an order determining that Adams is procedurally barred from pursuing his petition for readmission because the surrender of his license was based on violations of Arkansas Rule of Professional Conduct 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Under section 24(B)(3) of the Arkansas Supreme Court Procedures Regulating Professional Conduct of Attorneys at Law, "application for readmission to the Bar of Arkansas shall not be allowed [if] ... [a]ny of the grounds found to be the basis of a disbarment or any grounds presented in a voluntary surrender of law license are of the character and nature of conduct that reflects adversely on the individual's honesty or trustworthiness, whether or not the conviction of any criminal offense occurred." Therefore, Adams was found to be ineligible to apply for readmission. Adams appeals from that order.
This court has the express authority to regulate the practice of law under amendment 28 to the Arkansas Constitution, and the purpose of this amendment is to protect the public and maintain the integrity of the courts and the honor of the profession. In re Haynes , 2013 Ark. 102, 426 S.W.3d 411, 413 (citing In re Madden , 2012 Ark. 279, 423 S.W.3d 39 ). Once a lawyer has lost his or her license to practice law, whether through surrender or disbarment, there is a presumption against readmission. Id. The protection of the public and the honor and integrity of the profession have long been the principal criteria in determining whether a person should be admitted or readmitted to the bar. Redden v. Ark. State Bd. of Law Exam'rs , 371 Ark. 584, 589, 269 S.W.3d 359, 362 (2007).
Adams argues on appeal that the Arkansas State Board of Law Examiners clearly erred in denying his "Petition for Reinstatement" in that the "Finding and Order" of the chairman was arbitrary. He admits that the surrender of his law license was based on several complaints that resulted in findings that he had violated Arkansas Rule of Professional Conduct 8.4(c). However, Adams contends that, in light of previous cases, the finding of the Board in the present case was clearly erroneous and arbitrary. Specifically, he points to In re Petition for Readmission of Harold Wayne Madden to the Arkansas Bar , 2012 Ark. 279, 423 S.W.3d 39, and In Re Jerry Hudson Shepard, Jr., Application for Readmission to the Arkansas Bar , 2015 Ark. 93, 457 S.W.3d 280, the cases cited by the Board in the order finding Adams ineligible. In Madden , the attorney seeking readmission to the bar had pled guilty in federal court to misprision of a *839 felony. The appeal implicated section 24(B)(2), which prohibits application for readmission where "[t]he disbarment or surrender resulted from conviction of a Serious Crime in any jurisdiction other than commission of an offense for which the culpable mental state was that of negligence or recklessness." After the Board concluded, following a hearing, that Madden was eligible for readmission to the Bar because his crime involved the mental state of negligence or recklessness, this court held that readmission was prohibited under Section 24 and that the petition must be denied. In Shepard , this court addressed a situation similar to the one at bar:
The plain language of section 24.B.3 states that an attorney is not eligible for readmission where any of the grounds "presented in a voluntary surrender of law license are of the character and nature of conduct that reflects adversely on the individual's honesty or trustworthiness, whether or not the conviction of any criminal offense occurred." Thus, the question before this court is whether the grounds presented in Shepard's voluntary surrender of his law license bar his readmission. We conclude that they do. By his own admission, Shepard's conduct involved dishonesty and was prejudicial to the administration of justice. We do not need to examine Shepard's rehabilitation efforts because rehabilitation is pertinent only when an attorney is eligible for readmission. See, e.g., In re Haynes, 2013 Ark. 102, 426 S.W.3d 411, 415 (finding that the attorney had presented sufficient proof of rehabilitation after concluding that the attorney was eligible for readmission).
Shepard admitted in his petition to surrender his license that his conduct reflected adversely on his honesty, trustworthiness, or fitness to practice law, that his conduct was dishonest and that his conduct was prejudicial to the administration of justice and, therefore, he is ineligible for readmission based on the plain language of section 24.B.3.
In re Shepard , 2015 Ark. 93, 457 S.W.3d at 285. In addition, Adams cites In re Haynes , 2013 Ark. 102, 426 S.W.3d 411, in which this court granted Haynes's petition to be readmitted to the Bar of Arkansas after Haynes pled no contest to possession of methamphetamine and drug paraphernalia and voluntarily surrendered his law license. In Haynes , the Chair was "unable to determine" whether Haynes was eligible for readmission, and a hearing was held before the Board. After a 7-3 vote in favor of readmission, the petition was presented to this court. We note that Haynes , like Madden , concerns section 24(B)(2) (conviction of a serious crime) and is not directly on point.
Appellant argues that he was entitled to a hearing on his petition, and that the Board, in this case, "assumed the mantle of the Court which clearly, in the past, has decided each case of this nature on its own unique facts." However, the Board in this case has correctly applied this court's interpretation of section 24(B)(3) as set out in Shepard, supra. Adams admits that section 24(B)(3) of the Procedures provides a bar to readmission in instances in which the petitioner has engaged in conduct which adversely reflects on the individual's honesty or trustworthiness, and he admits that he engaged in such conduct. Adams correctly points out that this prohibition in section 24(B)(3) is not found in section 23, which governs reinstatement for attorneys whose law licenses have been suspended. However, pursuant to our precedent and the procedures governing readmission to the bar, we hold that Adams is barred from seeking readmission because his voluntary surrender of his law license was *840 based on violations of Ark. R. Prof'l Conduct 8.4(c).
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
I dissent. The majority has decided that Section 24(B)(3) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law renders Mr. Adams ineligible for readmission to the Arkansas Bar, but by my reading of the applicable rules, the majority is putting the cart before the horse. Mr. Adams has a right to a hearing in front of the Board of Law Examiners before his eligibility for readmission can be decided.
The procedures by which one may be readmitted to the Arkansas Bar are governed by Rule XIII of the Arkansas Rules Governing Admission to the Bar. "The determination of eligibility of every applicant shall be made in accordance with this rule and the burden of establishing eligibility shall be on the applicant." Ark. R. Admis. XIII. Rule XIII goes on to state:
A. Initial Review. Applications for admission, readmission after disbarment or surrender, or reinstatement after suspension pursuant to Rule VII(D) of these rules, shall be reviewed by the Secretary of the Board. Any application which raises questions of eligibility based upon the standards set out in this rule shall be referred to the Chair.
Ark. R. Admis. XIII(A). In this case, it appears undisputed that the Secretary received and reviewed Adams' application for readmission, and that the Secretary then referred Adams' application to the Chair of the Board of Law Examiners.
Rule XIII contemplates three potential outcomes after an application for readmission is referred to the Chair:
The Chair, applying the standards set out in this rule, shall determine whether: the applicant is eligible for admission, readmission, or reinstatement; to recommend the deferral of the admission decision; or, the Chair is unable to determine eligibility for admission, readmission, or reinstatement.
Id.
The first potential outcome is that the Chair can readily determine that "the applicant is eligible for admission, readmission, or reinstatement[.]" Id. Subsection C of Rule XIII addresses this scenario:
C. Decision of Chair-Admission, Readmission, or Reinstatement Granted. In the event the Chair determines that an applicant for admission is eligible, the Chair shall notify the Secretary, who shall certify to the Clerk of the Supreme Court (Clerk) that the applicant is eligible for admission.
...
In the event the Chair determines that an applicant for readmission after disbarment or surrender of license is eligible, the Chair shall so notify the applicant. The applicant will then be required to file a motion with the Arkansas Supreme Court as set forth in paragraph 2 of Section G of this rule. The Chair may condition such readmission upon the applicant taking the examinations as set forth in Rule IX of these rules or its successor rule.
Ark. R. Admis. XIII(C). In this case, the Chair did not determine that Adams was eligible for readmission to the Arkansas Bar; as such, Subsection C is inapplicable.
The second potential outcome is that the Chair "recommend[s] the deferral of the admission decision[.]" Ark. R. Admis.
*841 XIII(A). Subsection D of Rule XIII addresses this scenario:
The Chair shall annually appoint a Deferral of Admission Committee (Committee) composed of three (3) members. The committee members shall serve terms of one year subject to reappointment by the Chair. The Chair shall not be eligible to serve on the committee. The Chair shall designate the Chair of the committee.
In the event the Chair concludes that an applicant by examination might be eligible for admission absent circumstances set out hereafter, then the Chair may defer the eligibility decision and provide the applicant with the alternative of participation in a deferral of admission program (program). The circumstances which might warrant such a deferral are: an applicant currently has a condition or impairment resulting from alcohol or other chemical or substance abuse which currently adversely affects the applicant's ability to practice law in a competent and professional manner.
In such cases, the applicant shall be notified of the Chair's determination by certified, return receipt, restricted delivery mail. The applicant shall have thirty (30) days from receipt of notice in which to advise the Secretary that he or she is agreeable to participating in the program on such terms, and for such period of time, as may be set by the Committee. Failure of the applicant to timely agree to the program shall cause the application to be referred to the Board and processed as set forth in section E of this rule.
In the event an applicant elects the deferral of admission program, the committee shall secure such evidence as may be necessary to establish the terms and duration of the program. Such materials may include: documentary evidence supplied by the applicant; evidence secured by the Secretary; evidence acquired by an informal conference with members of the committee; or such other evidence as the committee may consider necessary to their decision. Prior to establishing the terms and duration of any deferral of admission program, the committee may reject the applicant as a candidate for the program. In such case, the applicant shall then be referred to the Board and processed as set forth in section E of this rule.
In the event the committee accepts the applicant as a participant in the program, then the applicant will sign an agreement with the committee which sets forth the terms and duration of the program. All expenses relating to the program shall be borne by the applicant, and this shall be part of the agreement. In the event the applicant does not sign the agreement within thirty (30) days of notification thereof, the deferral of admission for that applicant shall deem to have been waived. The applicant shall then be referred to the Board for disposition in accord with section E of this rule.
At the conclusion of the deferral period, or anytime prior thereto, the committee shall determine whether the applicant has complied with all terms and conditions of the deferral agreement, and the committee shall so notify the Board. The Board shall then, by majority vote, make a determination as to whether the applicant is eligible for admission. In the event of a favorable Board vote, The Secretary shall then certify to the Clerk that the applicant is eligible for admission.
In the event the Committee determines that the applicant has failed to comply with the terms and requirements of the deferral agreement he or she shall be referred to the full Board for disposition in accord with the provisions of section E of this rule.
*842 Ark. R. Admis. XIII(D). In this case, the Chair did not recommend deferral of Adams' application; as such, Subsection D is inapplicable.
The third and final potential outcome is that "the Chair is unable to determine eligibility for admission, readmission, or reinstatement." Ark. R. Admis. XIII(A). Subsection E of Rule XIII addresses this scenario:
In the event the Chair is unable to determine eligibility of the referred applicant, or in instances where other provisions of this rule mandate referral of the applicant to the Board for determination of eligibility, then the applicant shall be notified of such determination. The applicant shall be advised that he or she has a right to a hearing on the question and the right to be represented by counsel at the expense of the applicant. Such notice shall be sent by certified, return receipt, restricted delivery mail. The applicant shall have thirty (30) days from receipt of the notice to request a hearing. Such request shall be in writing and addressed to the Secretary.
Upon request of the applicant, the Chair shall appoint a hearing panel (panel) from the Board comprised of not less than three members who shall proceed to a hearing as hereafter provided. The Chair shall not be eligible to serve thereon. Absent exigent circumstances, the hearing shall be conducted within 60 days after the Secretary is notified that the applicant requests a hearing. The Chair shall designate a member to serve as Chair of the panel. For good cause shown, the Chair of the panel may grant extensions of time.
...
This panel shall be appointed for the sole purpose of making a full and accurate record of all facts and circumstances affecting the application.
Ark. R. Admis. XIII(E). I feel that Subsection E governs Mr. Adams' case at its current posture, and Subsection E provides that he has a right to a hearing before the Board of Law Examiners.
I understand that Mr. Adams' eligibility for readmission may turn upon the application of Section 24(b)(3), but Rule XIII simply does not contemplate a scenario where one can be denied eligibility for readmission without first being afforded the opportunity to have a hearing and make a record on whatever basis he or she believes he or she should be readmitted. Mr. Adams is asking for such a hearing. Perhaps Mr. Adams would have compelling evidence to put on the record that could warrant his readmission. If he were successful, it would not be the first time someone garnered readmission to the Arkansas Bar when the rules' plain language would appear to bar him or her from readmission. See, e.g. , In re Haynes , 2013 Ark. 102, 426 S.W.3d 411. Because the majority's decision denies Mr. Adams' application for readmission without first affording him the opportunity to have a hearing, I must dissent.

Along with his petition to surrender his license, Adams also resigned his judicial office by letter to the governor.